FILED
03 SEP 25 PM 1:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RAJINDER S. MEHTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 01-B-2008-NE |
| ) | |
| SEAN O'KEEFE, Administrator, NASA, ) | |
| ) | |
| Defendant. ) | |

ENTERED
SEP 25 2003

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 18.)[1] Plaintiff Rajinder S. Mehta has sued his employer, the National Aeronautics and Space Administration ["NASA"], by and through its Administrator, Sean O'Keefe,[2] alleging that defendant discriminated against him on the basis of his "age, race, color, religion, and national origin" with regard to a promotion decision. (Doc. 1 ¶¶ 1, 13, 16, 19, 22, and 25.) Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 18), is due to be granted, and plaintiff's claims are due to be dismissed.

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

[2]As originally filed, the Complaint named Daniel Goldin, Administrator, NASA, as the defendant. Since the filing of the Complaint, Sean O'Keefe replaced Goldin as NASA's Administrator. Therefore, by rule, O'Keefe is substituted automatically for Goldin. *See* Fed. R. Civ. P. 25(d)(1).



## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff is an Asian-American from India, and he follows the Sikh religion. He was 52 years old at the time of the promotion decision at issue.

On or about January 3, 2000, defendant posted a job vacancy for the position of Supervisory AST, Structural Dynamics GS-861-15. (Doc. 19, Ex. 2, ex. A.) The position announcement listed four "knowledge, skills, abilities, and other characteristics to be used in the evaluation of the candidates," commonly referred to as the position's "KSAs," which were:

> 1. Knowledge of theories, principles, and application of aerospace engineering with emphasis in areas such as vibroacoustics, dynamic design and test criteria, and dynamic testing of aerospace structures and components.
>
> 2. Knowledge of analytical techniques and methods to provide structural dynamics analysis and develop loads for launch vehicle and payload components.
>
> 3. Knowledge in the techniques and applications of modal survey, vibration, acoustic, and shock assembly, subassembly, and component testing, and dynamic data recording and processing systems.
>
> 4. Ability to represent the group and department on high level program and technical planning teams where component structural dynamics and testing concepts are crucial issues.

(*Id.*) The first KSA – "[k]nowledge of theories, principles, and application of aerospace engineering with emphasis in areas such as vibroacoustics, dynamic design and test criteria, and dynamic testing of aerospace structures and components – was an "essential" element or requirement for the position; the remaining three KSAs were considered "ranking factors." (*Id.*) The ranking factors "are used to evaluate or rank the applicants when there

3

are more than ten qualified applicants to determine which applicants are the best qualified for the position." (Doc. 19, Ex. 2 ¶ 8.)

Plaintiff and four other NASA employees applied for the position. (*Id.* ¶ 5.) Daniel L. Dumbacher, Structures, Mechanics, and Thermal Department Leader, rated plaintiff and Joseph Brunty, white male age 42, with regard to each KSA. Plaintiff was rated "superior" as to the three knowledge KSAs (nos. 1-3), and rated "between superior and satisfactory" as to the ability KSA (no. 4). (Doc. 19, Ex. 2, ex. C.) Brunty was rated "superior" as to each KSA. (Doc. 19, Ex. 2, ex. B.)

Defendant employs a Competitive Placement Plan, which "establishes minimum Agency procedures for filling positions . . . with current or former Federal employees with competitive status at or below the GS-15 level through competition and on the basis of merit." (Doc. 19, Ex. 2, ex. D at 1.) Pursuant to the Competitive Placement Plan, if there are more than ten applicants for a position, each applicant is "ranked"as to the other applicants to determine the "relative degree to which applicants possess the specified KSA's." (*Id.* at 5.) When there are less than ten applicants, "the normal ranking process" may be waived. (*Id.*) When the ranking process is waived, "the qualified applicants will be further screened against job-related criteria to distinguish well-qualified candidates. All well-qualified candidates will be placed on the certificate." (*Id.*) "Any employee listed on the certificate is eligible for selection." (*Id.*)

Kevin C. Plank, Labor Relations Specialist at the Marshall Space Flight Center [MSFC], stated that because there were only five applicants for the position, the ranking

4

process was waived. (Doc. 19, Ex. 2 ¶ 8.) He determined that all applicants were qualified for the position, and he placed the names of all applicants on the Promotion Certificate. (*Id.* ¶¶ 7, 9.)

The selecting official was John William Kilpatrick, Jr. (Doc. 19, Ex. 3 ¶ 2.) At the time of the selection, Kilpatrick was the Deputy Director of the Engineering Directorate. (*Id.* ¶ 3.) Kilpatrick asked Dr. Pedro Rodriguez and James W. Owen to assist him in interviewing the five applicants. (*Id.* ¶ 2.) Together, Kilpatrick, Rodriguez, and Owen developed eight standard questions for the applicants. (*Id.* ¶ 5.) "The questions were designed to elicit the applicants' knowledge of the Structures, Dynamics and Loads Group; management and leadership skills; and knowledge of and commitment to MSFC's Core Values." (*Id.*) The eight questions were:

> 1. What do you consider to be the most important element in assuring a safe work environment?
>
> 2. Briefly describe your commitment to the MSFC Core Values.
>
> 3. Describe the work performed in the Structural Dynamics and Loads Group, and how it supports the MSFC implementation.
>
> 4. [C]ite one example where you have demonstrated flexibility in the midst of organizational change, budget restrictions, or reprioritization of work.
>
> 5. What steps would you take to develop and maintain a work environment demonstrating team spirit, pride, and trust?
>
> 6. [C]ite one example of your leadership during your career.
>
> 7. [C]ite one example of a situation where you have resolved conflicts in a positive and constructive manner.

8. [C]ite one example illustrating your communication skills.

(Doc. 19, Ex. 3, ex. D.) Each questions was "weighted" either a "3" (questions 1, 2, 4, 7, and 8) or a "5" (questions 3, 5, and 6). (*Id.*)

During the interview, plaintiff received the following weighted scores:

|            | Kilpatrick | Owen | Rodriguez |
|------------|------------|------|-----------|
| Question 1 | 24         | 24   | 27        |
| Question 2 | 15         | 15   | 21        |
| Question 3 | 50         | 50   | 45        |
| Question 4 | 18         | 24   | 24        |
| Question 5 | 35         | 35   | 35        |
| Question 6 | 30         | 30   | 35        |
| Question 7 | 18         | 15   | 21        |
| Question 8 | 21         | 15   | 21        |
| Total:     | 211        | 208  | 229       |

(Doc. 19, Ex. 5, ex. E.) The combined interview score for plaintiff was 648. (*Id.*)

During the interview, Brunty received the following weighted scores for his eight questions:

|            | Kilpatrick | Owen | Rodriguez |
|------------|------------|------|-----------|
| Question 1 | 18         | 27   | 24        |
| Question 2 | 15         | 18   | 21        |
| Question 3 | 50         | 40   | 45        |
| Question 4 | 24         | 24   | 30        |
| Question 5 | 45         | 50   | 45        |
| Question 6 | 40         | 50   | 45        |
| Question 7 | 21         | 27   | 24        |

6

| Question 8 | 24 | 24 | 27 |
|---|---|---|---|
| Total: | 237 | 260 | 261 |

(*Id.*) The combined interview score for Brunty was 758. (*Id.*)

Based on their interviews, Kilpatrick, Rodriguez, and Owen gave Brunty the highest score; plaintiff received the third-highest score. (Doc. 19, Ex. 3, ex. C ¶ 15.) Kilpatrick stated that plaintiff's response to one of the interview questions caused him to doubt plaintiff's fitness for the position. (*Id.* ¶ 14.) In his declaration, Kilpatrick states:

> During his interview, Mr. Mehta mentioned an incident between [him] and a manager here at MSFC [Denny Kross] that occurred during a technical meeting at which I was in attendance. I was surprised that Mr. Mehta would bring this negative event up during an interview for a supervisory position. The fact that he mentioned this incident gave me doubt on two levels regarding Mr. Mehta's fitness for the position at issue. First I doubted his judgment in choosing to bring up this incident during the interview. Second, I doubted his ability to control his temper when he disagreed with someone else and wondered whether the behavior demonstrated during that technical meeting would be continued in other situations. The panel members discussed this situation during our caucus after the interview. I was made aware of [an] additional outburst by Mr. Mehta in the work environment at other times. This made me believe that dealing with people with whom he disagreed would be an issue if Mr. Mehta were selected for this position.

(*Id.*)

Kilpatrick selected Brunty because he believed Brunty was the best selection for the position based on his "performance during the interview, his advanced education,[3] his prior supervisory and team leadership, and his overall management and leadership abilities." (*Id.* ¶ 16.)

---

[3] Brunty has a doctorate in Mechanical Engineering. (Doc. 19, Ex. 2, ex. B.) Plaintiff contends that he has completed the course work necessary fo a doctorate in management, but his highest degree is a Masters of Science in Mechanical Engineering. (Doc. 19, Ex. 2, ex. C.)

7

Plaintiff contends that Brunty did not have "the level of experience in vibroacoustics required for [the position]." (Doc. 22 ¶ 45 (citing doc. 23, Ex. T at 2 and Ex. U at 1).) However, Brunty's application states:

> During the past 17+ years, I have obtained extensive knowledge of the techniques and applications of modal survey, vibration, acoustic and shock assembly, subassembly, and component testing. This was gained through my graduate level education, continuing education, and on the job training (120+ hours of course work). . . . My most recent course (fall of 1999) that I completed contained modern techniques of random vibration analyses including the areas of vibroacoustics, random vibration analyses, dynamic data processing and component testing. For the past 9+ years modal survey and vibration testing have been under my supervision as branch chief and team leader . . . .

(Doc. 19, Ex. B at 3.) Thus, at least according to his application, Brunty had the requisite knowledge of vibroacoustics.

Plaintiff contends that he was called "rag head" by James McBride. (Doc. 22 (citing doc. 23, Ex. 6 at 98-99 and Ex. 8 at 12.) McBride retired in 1999. (Doc. 23, Ex. 8 at 6.) Nothing in the record indicates that Kilpatrick was aware of or agreed with McBride's name-calling.[4]

Based on his non-selection, plaintiff filed a Charge of Discrimination with the EEOC, alleging that he had been discriminated against with regard to a promotion decision on the basis of his "race (Asian-American), National origin (India), religion (Sikh), and age (52)." (Doc. 19, Ex. 6 at 2.) Plaintiff asked for a hearing before an Administrative Law Judge;

---

[4]Although not binding on this court, the court notes that the Administrative Law Judge that heard this case at the EEOC found that "there is no evidence that James McBride, who admitted to having referred to the Complainant as a rag-head, had any influence in the selection process." (Doc. 19, Ex. 6 at 3.)

however, defendant moved for the issuance of a decision without a hearing because "there [was] no genuine issue of material fact which would warrant a hearing on the merits of Complainant's allegations of discrimination." (*Id.*) The Administrative Law Judge granted defendant's motion and found that summary disposition of plaintiff's complaint was appropriate. (*Id.* at 3-4.) Specifically, the Administrative Law Judge held:

> [T]here is no evidence which persuasively shows that the Agency's articulated reason for the Complainant's non-selection to fill the position at issue is a pretext for unlawful discrimination. Furthermore, there is no genuine dispute, under the prevailing Summary Judgment standards, with respect to a material fact and no genuine issue as to credibility which would warrant a hearing on the merits of the Complainant's allegations of discrimination. Therefore, a summary disposition of the . . . complaint, without a hearing, is appropriate.

(*Id.*) Plaintiff filed the instant action on August 3, 2001.

### III. DISCUSSION

Plaintiff contends that defendant denied him a promotion on the basis of his race, national origin, religion, and age. To support his claims of discrimination, plaintiff relies on circumstantial evidence. Therefore, the court's analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411

9

U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that defendant's articulated reasons are a mere pretext for unlawful discrimination. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

To establish a prima facie case of discrimination with regard to promotion decisions, plaintiff must prove: (1) he is a member of a protected class; (2) he was qualified and applied for an available position, (3) he was rejected despite his qualifications; and (4) the position was filled by an employee who is not a member of the protected class. *Walker v. Mortham*, 158 F.2d 1177, 1186, 1191-93 (11th Cir. 1998)(citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-88 (1989); *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)). For purposes of deciding defendant's Motion for Summary Judgment, the court assumes that plaintiff can establish a prima facie case of discrimination.

"Once a prima facie case is established, a defendant must proffer legitimate, nondiscriminatory reasons for its employment decision." *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1361 (11th Cir. 1999)(citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)). If defendant carries this burden of production, "the presumption of discrimination [created by plaintiff's prima facie showing] is eliminated, and

10

the plaintiff must submit evidence showing that the articulated reason is pretextual. If pretext is established, summary judgment in favor of the defendant is generally inappropriate." *Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n. 11 (11th Cir. 2000); *Combs*, 106 F.3d at 1538).

Plaintiff may establish that an articulated reason is a pretext for unlawful discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir. 1985)(citing *Burdine*, 450 U.S. at 256)). If a plaintiff chooses to establish pretext by showing that his employer's proffered reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman*, 229 F.3d at 1030. He must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).; *see also Damon*, 196 F.3d at 1361.

The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Prudential*, 286 F.3d at 1276 (citations omitted). "'Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.' When

11

evaluating a charge of employment discrimination, then, [the court] must focus on the ***actual knowledge*** and ***actions*** of the ***decision-maker***." *Id.* at 1274 (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001) and citing *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir.2001))(emphasis added).

Kilpatrick, the selecting official and, thus, the decisionmaker, stated that he selected Brunty based on his determination that Brunty was the best selection for the position based on his "performance during the interview, his advanced education, his prior supervisory and team leadership, and his overall management and leadership abilities." (Doc. 19, Ex. 3 ¶ 16.) This reason is sufficiently specific to shift the burden to plaintiff to establish that the reason is unworthy of credence.

Plaintiff contends that Kilpatrick's reasons for selecting Brunty are unworthy of credence and that the real reason for plaintiff's non-selection is his race, national origin, religion, and age. Plaintiff contends that Kilpatrick's reasons for selecting Brunty are unworthy of credence for the following reasons:

    1. The incident with Denny Kross referred to during his interview was not considered a "negative."

    2. Plaintiff was more qualified than Brunty for the position.

    3. Dumbacher's Supervisory Appraisal was not included in the application packet.

    4. McBride and Rodriguez attempted to have defendant add a management KSA to the vacancy announcement.[5]

    5. Brunty did not meet the requirements for KSA 4.[6]

    6. None of the qualified candidates were ranked against the KSAs for the position.

    7. Ranking panel participants Owen and Rodriguez never reviewed plaintiff's application package to evaluate the KSAs.

    8. The participants in the ranking panel provided inconsistent information about the post-interview caucus.

    9. As to the only interview question relevant to any of the stated KSA's plaintiff rated higher than Brunty.

    10. Plaintiff was entitled to preferential consideration based on NASA's Affirmative Employment Program.

(Pl. Memo. in Opp. to Mot. for Summ. J. at 19-22.)

The court finds that plaintiff's assertions are not substantial evidence on which a reasonable jury could find that Kilpatrick's articulated reasons are unworthy of credence.

### 1. Plaintiff's Temper.

Kilpatrick testified that he had doubts about plaintiff's fitness for the position at issue because plaintiff "mentioned an incident between [him] and a manager . . . that occurred during a technical meeting." (Doc. 19, Ex. 3 ¶ 14.) Kilpatrick had doubts about plaintiff's

---

    [5]Management experience was not added to the vacancy announcement. (Doc. 19, Ex. 2, ex. A.) However, because the position is a supervisory position, (*id.*), the court finds that management experience and ability is a relevant consideration.

    [6]KSA 4 required applicants to have the "ability to represent the group and department on high level program and technical planning teams where component structural dynamics and testing concepts are crucial issues." (Doc. 19, Ex. 2.)

13

"judgment in choosing to bring up this incident during the interview" and about his ability to control his temper. (*Id.*) Plaintiff argues that the incident "was not a negative against Plaintiff – Plaintiff was actually commended by Pete Rodriguez for how he conducted himself." (Pl. Mem. in Opp. to Mot. for Summ. J. at 19.) He also argues, "Others who . . . witnessed this incident found no fault in how Plaintiff behaved." (*Id.*)

The fact that others may have considered plaintiff's behavior appropriate, however, does not establish that Kilpatrick did not consider plaintiff's behavior – during the incident and in discussing the incident during his interview – as a negative. Kilpatrick has stated that he "believed that dealing with people with whom he disagreed would be an issue if Mr. Mehta was selected for this position." (Doc. 19, Ex. 3 ¶ 14.) Plaintiff's evidence that others did not form the same negative opinion of his ability to control his temper and work with those who disagree with him does not rebut – head-on – the fact that Kilpatrick considered the incident to reflect negatively on plaintiff's abilities.

Therefore, the court finds that plaintiff's evidence does not show that Kilpatrick's articulated reason – that he was concerned about plaintiff's ability to get along with others based on plaintiff's disagreement with Denny Kross and his statement during the interview – is unworthy of credence.

**2. Plaintiff's Qualifications as Compared to Brunty's Qualifications.**

Plaintiff contends that he more qualified than Brunty. (Pl. Mem. in Opp. to Mot. for Summ. J. at 19.) Specifically, he states:

14

>If one assumes as detailed in the evidentiary record that "management" was the key discriminator for Plaintiff's non-selection this is very disingenuous. Plaintiff had completed his course work toward a doctorate in management. Plaintiff has an undergraduate degree in Engineering and a masters degree in engineering. Plaintiff was highly qualified for this position and considered to be one of the best in the field of vibroacoustics. Plaintiff had thirty (30) years work experience with NASA; Brunty had only 18.

(*Id.*)

"[T]he Eleventh Circuit Court of Appeals has repeatedly held that, where a claim of discrimination is based on relative qualifications, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'" *Hall v. Alabama Ass'n of School Boards*, 326 F.3d 1157, 1167-68 (11th Cir. 2003)(internal citations and quotations omitted). Plaintiff's qualifications, relative to Brunty's qualifications, are not so apparent. Also, Kilpatrick could legitimately choose to favor a person with a Ph.D. in Mechanical Engineering and demonstrated managerial experience to a person who had completed course work toward a Ph.D. in Management with no demonstrated managerial experience.

Therefore, the court finds that any disparities between plaintiff's qualifications and Brunty's qualifications do not establish that Kilpatrick's articulated reason for selecting Brunty is unworthy of credence.

### 3. Dumbacher's Supervisory Appraisal.

Plaintiff contends that Dumbacher's Supervisory Appraisals were not part of the application process. (Pl. Mem. in Opp. to Mot. for Summ. J. at 19-20.) In support of his contention, plaintiff cites the court to two exhibits containing his application package and

15

Brunty's application package, which do not contain the supervisory appraisals. (*Id.* (citing doc. 23, Exs. K and L.) Defendant's evidentiary submission of the application packages contains the supervisory appraisals. (*See* doc. 19, Ex. 2, exs. B and C.)

For purposes of summary judgment, the court assumes that such supervisor appraisals were not considered by Kilpatrick. Such assumption, however, does not establish that Kilpatrick's articulated reasons for selecting Brunty are pretextual because Kilpatrick does not contend that he relied on the supervisory appraisals in selecting Brunty. Therefore, the court finds that the issue of whether the supervisory appraisals were included in the application packages is irrelevant to the determination of whether defendant's articulated reason for selecting Brunty is unworthy of credence.

### 4. Management Experience Requirement.

Plaintiff argues that McBride and Rodriguez tried to have management experience included as a selection requirement. Neither succeeded, and the vacancy announcement did not include a requirement of management experience. (Doc. 19, Ex. 2 ex. A.) The court finds that the attempts of McBride and Rodriguez, who were not decision-makers, to add a requirement of management experience to the position is not probative of whether Kilpatrick's reasons for selecting Brunty are unworthy of credence.

### 5. Requirement KSA 4.

Defendant contends that Brunty did not meet the requirements for KSA 4 because he did not have sufficient training and/or experience in vibroacoustics. KSA 4 required applicants to have the "ability to represent the group and department on high level program

and technical planning teams where component structural dynamics and testing concepts are crucial issues." (Doc. 19, Ex. 2.) However, the issue is not whether Brunty had the ability to represent the group, the issue is whether the decision-maker, Kilpatrick, was aware that Brunty did not have such ability. *See Prudential*, 286 F.3d at 1274, 1276. Nothing in the record indicates that Kilpatrick knew or should have known that Brunty, despite his years of training and experience, did not have the "ability to represent the group and department on high level program and technical planning teams where component structural dynamics and testing concepts are crucial issues." (*See* doc. 19, Ex. 2, ex. B.) Moreover, plaintiff has not shown that he was actually more qualified that Brunty with regard to all requirements, not just in the area of experience in vibroacoustics. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1269 (11th Cir. 2001)(the court "will not second guess" an employer's decision to emphasize certain qualifications over other qualifications).

Therefore, plaintiff's assertion that he was more qualified than Brunty, without a showing that Kilpatrick knew plaintiff was more qualified Brunty, is not sufficient to establish that Kilpatrick's articulated reason for preferring Brunty is unworthy of credence.

### 6. Ranking of the Candidates

Plaintiff contends that Kilpatrick's reason for selecting Brunty is a pretext because none of the candidates were ranked against the KSAs. However, due to the small number of applicants, defendant's competitive bid procedures do not require the ranking of the applicants. (Doc. 19, Ex. 2, ex. D at 5.) Therefore, the court finds the fact that the candidates were not ranked is irrelevant as to the issue of pretext.

**7. Actions of the " Ranking Panel Participants"**

Plaintiff contends that Kilpatrick's reasons are a pretext because Owen and Rodriguez, members of the so-called "ranking panel," never reviewed plaintiff's application package and have given inconsistent information about the post-interview caucus. The court notes that Owen and Rodriguez are not members of the "ranking panel." No ranking panel was convened in this case and no ranking was performed. Kilpatrick merely asked Owens and Rodriguez to help him interview the candidates. Also, Owen and Rodriguez's scores placed Brunty ahead of plaintiff, as did Kilpatrick's scores. Therefore, the court finds that the actions of Owen and Rodriguez regarding their review of the applications and what happened after the interviews does not establish that Kilpatrick's reasons for preferring Brunty are unworthy of credence.

**8. Interview Question Related to KSAs**

Plaintiff contends that only one question asked during the interview was related to the KSAs, and, on that question, he rated higher than Brunty. Therefore, he contends that he should have been selected. The procedures for the competitive promotion process state that any applicant may be selected from the Promotion Certificate. Plaintiff cannot substitute his judgment, that the applicant with the best answer to one of eight questions should have been selected, for the judgment of the decision maker.

The court finds that plaintiff's score on one question does not establish pretext, particularly in light of Kilpatrick's score on all the other questions. *See Cofield*, 267 F.3d at 1269.

18

### 9. NASA's Affirmative Employment Program.

The Eleventh Circuit Court of Appeals has held that "'the failure to give a preference under . . . a plan [of Affirmative Action] cannot be used to support an allegation of discrimination in employment.' Any deviation from [defendant's] plan . . . does not constitute evidence of pretext." *Prudential*, 286 F.3d at 1279 (quoting *Liao v. TVA*, 867 F.2d 1366, 1369 (11th Cir. 1989)). Therefore, the court finds that defendant's deviation from its affirmative action plan, if any, does not establish pretext.

Because plaintiff has not presented substantial evidence that defendant's articulated reasons for his non-selection is pretext for unlawful discrimination, summary judgment in favor of defendant is due to be granted, and plaintiff's claims are due to be dismissed.

### CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this  25th  day of September, 2003.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge